The last case today is U.S. v. Elmore. This is 22-1432. Good morning, your honors. May it please the court. Amy Seno on behalf of the appellant, Mr. Corbin Elmore. After finding his minor son suffering from a drug overdose, Mr. Elmore did everything he could to save his child's life. He summoned help from a neighbor. He asked him to call 911. He brought his son outside as close as possible to where emergency services would soon be arriving. And when emergency help did arrive, and in response to a question about what drugs his son had taken, Mr. Elmore invited emergency personnel right back into his home, into his son's room, and pointed to the source of the overdose, an open box lying on his son's bed, which was full of different vials of drugs, syringes, and other paraphernalia. The EMT then removed that box from the home. In the moment that he did, the police had no probable cause to believe that evidence of a crime would be found within the home. So the subsequent seizure of the home by police at 1130 in the morning was therefore unlawful. It's undisputed here that all of the overdose-related drugs and paraphernalia were removed from the home. So the only question for this court for the probable cause analysis... You say it's undisputed that all drugs were removed from the home? All of the overdose-related drugs, your honor. The drugs that were used... How do we know that? The government has never argued otherwise, and the district court's probable cause determination was based on the idea that there might be other additional drugs still in the house unrelated to the overdose. Okay. I thought you were saying no drugs at all, but I get you. I apologize, your honor. Just the overdose-related drugs. Yeah. So that's the only question for this court. And the district court's conclusion on that point is based on no facts, just generalized assumptions and speculation. And a lack of probable cause here is dispositive of this appeal. The government's only other argument regarding no suppression assumes that there's probable cause. So the parties also appear to agree that if this court concludes there was no probable cause at the outset of the seizure, then the district court erred and should be reversed. If we find that there is probable cause, but the scope of the probable cause may be different. In other words, if we conclude that there was probable cause to search the bedroom because of the possibility that the son may have had other drugs in the bedroom, but not elsewhere in the house, does that matter? I think it does matter, your honor, because the challenged evidence is in the parent's bedroom on a different floor. And so there would be still... That's true, your honor. But we would just have to, in order to invoke the suppression remedy, we would just have to show that there's a causal connection between what the police did unlawfully and the challenged evidence. And we've shown that here based on the unlawful seizure. So if the court finds that anything about the seizure is unlawful, we've met that burden. And then asking what would have happened in this alternate universe was the government's burden to prove. They haven't invoked that here. So that wouldn't be part of the court's analysis. So the police here seized Mr. Elmore's home as a purported crime scene. But as this court in the Supreme Court have repeatedly said, there's no crime scene exception to the Fourth Amendment. So as we've been discussing, the police need both probable cause and an exigency at the outset. Otherwise, the seizure is unreasonable. And here the police had neither. As we discussed, there was no probable cause because the overdose-related drugs were taken from the home. And the conclusion that there could be additional drugs in the home is just based on pure speculation that a drug user might always have more drugs in their home. But we see that in all kinds of cases where that assumption is made. That's true, Your Honor. But if you look to this court's opinion in Mora, the court is very clear that that's not the only assumption that's made. So to find a probable cause nexus to search a home, we can rely on an officer's training and testimony that this is an assumption based on what happens in these types of cases. But we need something more. We need additional corroborating evidence that's linked to the specific facts of this case. And that's what's missing here. Do we do anything? Did the district court do anything with the fact that the defendant either drug-carried, helped his son out of the house and out into the, I guess it was a driveway? Is that something the law enforcement could look at and say, what's this about? Why would you move this young man who was unconscious? We can't take that into consideration here for two reasons. The first is Mora. That alone still would not be enough unless it was linked to the facts of this case. But it's even stronger here because of the facts that actually happened here. That training and experience relies on the assumption that you move someone from inside the house to outside of the house to conceal evidence from emergency personnel that might be coming to help. We know that that can't be what happened here. Because immediately after EMS arrived, Mr. Elmore escorted personnel right back into the house, into the room where the overdose happened. And so he's in the exact same position, whether he moves his son or not. The only difference is that he has put his son in a position to save his life. And that's exactly what happened. He was able to get life-saving treatment immediately because they didn't have to navigate a stretcher inside the house. They didn't have to get down to the basement. They were right there where he could get help. So that also adds nothing to the probable cause analysis. And we're not left with anything else. There's just speculation and unsupported officer training and experience. And that's not enough, according to this court's decision in Mora. Even if this court were to find otherwise, that there was probable cause at the outset, we still would have to have an exigency here. And there's also no evidence that there's any sort of exigency. In MacArthur, the case that all of these rules come from, the exigency exists because the suspect would have been left alone with the contraband while officers got a warrant. And that's not what we have here. And in fact, in every case cited by the government, it was either the suspect that would have been left inside with the evidence, people that were involved in the criminal enterprise. It wouldn't be fair here for the law enforcement to think, well, perhaps the parents would try to move or conceal drugs or other illegal items if they had access to the home? Two things on that, Your Honor. The police need particularized knowledge of the evidence that they want to preserve. So just a general worry about some kind of evidence being destroyed isn't enough. There's some drugs. There could be other drugs. There could be more drugs. Sure. If Your Honor thinks that's what they're going with. Sure. So if that's the particularized knowledge of the evidence that they're trying to preserve, then they still need a reason to believe that the parents would act that way. Notably, the government has cited not a single case where that was the situation. And the Supreme Court has weighed in on this and said that there's no exigency when the only people that are home are unrelated to the criminal enterprise and have done nothing wrong. That doesn't provide us with a destruction of evidence exigency. And then again, here we have more. We know that Mr. Elmore was not trying to conceal evidence because he chose to escort the emergency personnel right back into his house where the evidence was. No, but he's basically saying, here it is. This is it. This is the box. Take the box because that's where we think the drugs came from that he was using. So it's sort of a limited access. Do this, take this, and leave. Not exactly, Your Honor. The record shows that what happened was the EMT asked, do you know what your son took? Mr. Elmore said, no, but I think there's something you should see. Right. They go into the house, and then Mr. Elmore asks an open-ended question. Is this what you were looking for? He doesn't say, don't look anywhere else, only take this. Right, but the point is he focuses EMT on that box. That's true, Your Honor, because it was found on the son's bed where the son was found by Mr. Elmore. So it's not as if there's any other facts or evidence in this case for us to believe that he would have destroyed evidence on his son's behalf. And we can't just speculate. We need evidence for there to be an exigency. You know, it's not as if Mr. Wilson, the person who came into the room to help with CPR and call 911, had seen the father sliding drugs under the bed or something. Certainly that would provide an exigency, but there's nothing remotely like that here. So really, the government is asking for a rule that there's an exigency any time there's anyone left alone in a house that has evidence. And that's unsupported by Supreme Court case law and case law of this circuit. But even if the court finds that the seizure was reasonable at the outset because there was probable cause and exigency, the seizure was still unreasonable because of scope and duration. This was an extraordinary deprivation, excluding Mr. Elmore and his family from their home after their son just died and after his wife herself was suffering from a painful medical condition and had just been released from the hospital. Do we consider the wife's deprivation and the child's deprivation or just Mr. Elmore? Both, Your Honor. How can we consider the wife or the child, since you generally can't assert the Fourth Amendment interest of a third party? That's because the interest here is a possessory interest in the house. And so possession, of course, is exercising dominion and control over something. And so even if Mr. Elmore was not physically home, he certainly has an interest in exercising control over his home such that his wife and his child can go inside of it. So the scope was unreasonable because it was so extraordinary. And then also the duration. By the officer's own testimony, he didn't even definitively decide to get a warrant until roughly 2 p.m. And then even after that, he drove back to his office and then conducted several additional interviews. So by the time he begins working on the warrant, several hours have passed. That can't be diligence under this court's case law and under MacArthur. And if there are no questions on that point, I'd like to save the remainder of my time. I have a lot of questions. Oh, sure. Go ahead. No, go ahead, Your Honor. Well, I am more curious maybe than all of this because it's so well covered in the briefs. Is there a problem here that the district court did not respond to two of the issues that I thought you had initially raised in your motion to suppress? The curtilage issue and the Franks issue. Those issues only come up, Your Honor, for this court if the court determines that there's no probable cause but for some reason decides not to suppress. Okay. And only in that situation. I wanted to hear you say that because that's what you say in your reply brief, and I was a little surprised to see it, but thank you. The court would have to technically excise the warrant based on all the Franks, assuming that they are violations, and then determine what's left if that meets probable cause. So it would depend precisely on what the court's probable cause determination is about. But if the excise warrant provides it, then yes, the court doesn't need to reach it in that case. Thank you. Thank you. All right. Thank you. And we'll hear from Ms. Miller. Good morning, and may it please the court, Marissa Miller for the United States. This court should affirm the order below for two independent reasons. First, the temporary seizure in this case was lawful under the Supreme Court's decisions in Segura and McArthur. And second, even if it was not, the causal connection between the alleged Fourth Amendment violation and the evidence at issue is too weak to justify the application of the exclusionary rule. I'd like to start by making some points on the probable cause issue. I think the law is fairly well settled, and we cite the Lefebvre Treatise on this, that when there's probable cause to search someone's home for evidence, the fact that they might have a specific bedroom doesn't limit the search to that room. Was there probable cause to search for firearms? I think that we frequently worry about firearms in drug cases here, I think because they suspected. So if you had come to a magistrate judge and said, we want a warrant to search the whole house, including the upstairs bedroom for the guy who turned the sun in and showed the EMT officers the little drug stash, we want an affidavit to search for firearms. And the judge says, well, what makes you think that there are firearms? Well, people that handle drugs, like this youngster that is consuming drugs, guys like that have firearms a lot of times. And so I can see some sort of very lenient magistrate judge saying, OK, well, you can search the kid's bedroom for firearms, but how in the world can you convince any magistrate judge in the United States to look at the dad's bedroom for firearms? I take your point, Your Honor. But I think even if you and I disagree on whether or not there was probable cause to search for firearms, the result of this case doesn't depend on that. Well, OK, so if there's a probable cause and you go to the magistrate judge to get a warrant to search for drugs. Yes. So number one, how are you going to get an affidavit to search the upstairs bedroom, Mr. Elmore's room for drugs? Because Logan has access to everywhere in the house. So there's a fair probability and probable cause that the youngster who's trying to hide drugs is going to hide them in his daddy's bedroom. You know, it's certainly a counterintuitive choice, but we have testimony from the detective in this case who says that when we do these drug cases, where do we expect to find drugs? Pretty much anywhere you can hide them, right? And that's the whole point of hiding, is that you don't always put them in the places people expect. OK. The other point I guess I would make with respect to probable cause is that I don't think the Mora case helps Mr. Elmore very much. That was kind of a unique case where we're talking about human trafficking. Right. And so you really the only evidence one could really think of to see in some independence home for human trafficking would be, you know, documents or maybe something like that. And the only justification offered by the police officers was a cell phone. Here we're talking about drugs. We're talking about drugs anywhere you can hide them. I think that Nexus requirement is satisfied. Mr. Elmore, you know, makes a fair bit about the fact that he gave the EMTs the box of drugs. That certainly can be interpreted in more than one way. But ultimately, I'm not sure it fairly factors into the probable cause analysis here, because in this context, we analyzed probable cause at the outset of the seizure. And the detective did not learn that Mr. Elmore gave the box of drugs to the EMT until he got to the hospital, which was after he had decided to seize this property. So if we look at the probable cause at the moment that they decided to seize the house, well, what about the stuff that's later found, you know, the colloquy about the car and the gun safe? None of that is known to the officers at that time. None of that. It's only after the detective goes, makes this long drive back to his office, and they start investigating so that they acquire that additional information. So what under MacArthur allows an officer to expand the scope of probable cause, to expand the factual material in the affidavit based on investigation that's learned after the decision who initially seized the property? Certainly nothing in MacArthur allows that. The reason that that's entirely irrelevant is because of the causation analysis that we have to perform in the exclusionary rule context. So the way that we deal with that essentially is fruit of the poisonous tree. This court has been very clear that it is the defendant's burden to establish fruit of the poisonous tree. You know, what that means is really was the evidence at issue the product of the Fourth Amendment violation? The word the Supreme Court uses is exploitation. Did police exploit that violation to get there? And, you know, essentially, really what the defendant has to show is that in this parallel universe where the Fourth Amendment violation doesn't happen, the police never find that evidence. So assuming, and I recognize this may be a large assumption, but assuming that the court agrees with the government that there was probable cause to search this home without the additional evidence found during the seizure, then the search warrant itself. Okay, there's two things, the truck and the gun safe, right? So how do they, how would they, so you're arguing inevitable discussion. No, we are not. We are arguing that they have not satisfied the but-for requirement that this court laid out in Shrum, Suggs, and most importantly, United States v. DeLuca. Well, their argument is rather straightforward on the fruit of the poisonous tree. No, Your Honor, it's not, and let me explain why. Okay. So their argument is essentially that there's a causal connection here because if the police officers don't seize the home, we don't know if they would have gotten a warrant. Well, I'm not trying to borrow a quarrel with you, but I thought their argument was a little bit more nuanced than that. They seize the house and then they investigate. Yes. That is itself an expansion of MacArthur. No, Your Honor. Okay. So I think, again, let me clarify. If you think we don't have enough for probable cause at the outset of the seizure without anything that happened during the seizure, then we lose. I'm not asking that. I'm asking about three and four. You're asking about three and four? Right. And the fruit of the poisonous tree on factors three and four. Sure. I'm not sure those doctrines intersect. Well, what I guess what I'm trying to ask you is about the fruit of the poisonous tree. If it hadn't been for expanding the duration and scope of the seizure, they wouldn't have seen the gun safe and they wouldn't have had any additional information that allegedly is acquired from Elmore about the truck. Sure. Your Honor, let me explain how the fruit of the poisonous tree analysis works. Obviously, you don't understand it, but here's how I imagine it works. As this court said in DeLuca, the defendant has the burden of establishing that causal connection. Right? So let's imagine the parallel universe where the seizure and only the seizure does not happen. Okay. So Detective Smith shows up and he's like, wow, this is really bad, but I'm not going to secure the property. And then he drives to the hospital and he tries to speak to Logan and then he tries to speak to Mr. Elmore and he can't and he's already spoken to Mr. Wilson. So he goes back to his office and he writes up the search warrant, but because we don't have any of that other stuff about the truck or the vials, the search warrant just contains everything he knew at the beginning, which in our view is sufficient for probable cause. He submits that and the magistrate judge grants it. Now, I know that the defendant believes that that is an inevitable discovery argument, and I would like to explain, if I may, why it is not. Fruit of the poisonous tree is a threshold question on which the defendant bears the burden of proof. If and only if the defendant has satisfied that burden of proof, the burden shifts to the government to show this alternative set of facts. Right. So our paradigmatic inevitable discovery case is police illegally search a car. And then we argue, well, even if we hadn't done that, you know, we would have impounded this and there would have been an inventory search. And that's not what's happening here. The defendant still hasn't established that causal connection because all Mr. Elmore has said is, well, we don't know if the detective would have gotten a search warrant and we don't know if the magistrate judge would have granted it. And while I have responses to those arguments, the problem is that the burden is on the defendant at this stage. Right. So if the defendant, it's the defendant's responsibility to convince you guys that in this alternate universe where the seizure never happens, the police don't find this evidence. And the only way this happens is either there wasn't probable cause for the warrant or the detective decides not to get a warrant or the magistrate judge doesn't grant it. Give us your probable cause to secure the house. Start at the beginning. OK, certainly. Probable cause to search the house, as both the magistrate judge and the district court found, arises simply to secure the house. So probable cause as in like the good reason to fear secure. OK, yes. So one, two. So that comes from the fact that Mr. Elmore moved Logan outside of the home. And as the detective swore in his affidavit, in his experience, that is something people will do when there is evidence in the home. You've got a drug overdose and you've got the movement of the young man. Well, we've got Mr. Wilson also saying the young man has a drug problem. We have the successful Narcan. And then we have Mr. Logan removing, sorry, Mr. Elmore removing his son. And then I would also say that, first of all, I think the good reason to fear standard is not a very high one. As we see, if we look at the MacArthur case, it's basically pure speculation. And it also allows us to draw on things like life experience and common sense. And so this is, I think, a good reason to fear the rest of that thought is good reason to fear that there will be evidence destroyed or removed. Yes. Well, step back up, step back, sorry, to step one. And I just what you're not adding in there is the circumstances of this particular situation where we had the father who is trying to resuscitate his son. And yes, he pulls him outside, but he also leads the EMT at the EMT's request for, you know, what drugs do you take? He says, I think I have something you might need. He brings him inside. He leads him to the son's bedroom. He leads where he found his son on the bed, where these drugs are and where the paraphernalia is. That would seem to discount any idea that there's probable cause to believe this father was hiding anything. Certainly, Your Honor. So to respond to that, again, because the detective doesn't know that that's something Mr. Elmore did, it can't vitiate probable cause because the objectively reasonable officer didn't have that information. But regardless, I think, you know, what we're disputing is these two facts, right? He had the information. They knew what drugs. They had the box. The EMT gets the box, but the detective shows up. Nobody tells him that Mr. Elmore gave the box to the EMTs. He doesn't find out about the box until he gets... How else would they have gotten them if they didn't go inside? I'm not aware of anything in the record that says... I mean, just the EMT went inside, right? Not law enforcement? Yes, the EMTs were the only ones who arrived. They arrived first. Mr. Elmore gives the box to the EMT. The EMT goes to the hospital. It's only when the detective later goes to the hospital that one of the nurses says, hey, the EMTs brought this metal box with them that the dad gave him. But I do think ultimately what this boils down to is these two facts that are susceptible to these two different interpretations, right? One of them is Mr. Elmore is trying to get the best help for his son. But one of them is, as the government has argued, that Mr. Elmore is essentially trying to control and limit the access of these emergency personnel. That's a possibility. Your brief is full of possibilities and speculation about what could have been happening here, what the parents' motives might have been. But you've got to show probability, and I just don't see that. Your Honor, I think the second prong of MacArthur only requires reasonable suspicion. I'm back to the first one. I'm back to probability. Okay. I think this court will be breaking new ground if it held that on drug possession, probable cause is only limited to the room in which that individual sleeps, or it's not limited to their parents' bedroom. But obviously our case does very much depend on probable cause. I do think there is a causation problem here. But I think that we have to prove probable cause, and so I'd love to answer any more questions about that. What specifically is the causation problem? This is not the evidence that was discovered. The Fourth Amendment violation is not the but-for cause of the discovery of this evidence. In the situation where the Fourth Amendment violation doesn't happen, where there's no seizure, we still get the warrant, they still search the home, and they still find the guns. And that's predicated on the assumption that the affidavit to search the home, particularly the second-floor bedroom for Elmore, would have issued in the absence of the officer observing the gun safe on the first floor, and the colloquy about whatever Elmore said or didn't say about the truck. Yes, Your Honor. Got it. I see that my time has expired. We respectfully ask you to affirm. Okay, thank you. So the government claims for the first time ever that Detective Smith didn't learn until after the seizure. Everybody in the district court believes that the opposite is true. It is in the district court's decision, his ruling, that we need to consider what we do with the fact that the EMT had this box and brought it out of the house. I think that's enough. That's what I thought was in the district court's ruling. Right. So I think we have to assume that Smith did have the knowledge at the time. At the time. At the time. When at the time? At the time. When he said, secure the house? That's the key of time, isn't it? Exactly.  Exactly, Your Honor. At that time, we have to assume, based on the district court's ruling, that he was aware that the box of drugs was taken out of the house by the EMT. And importantly, there were police that were on the scene when the EMT did that. But did this detective know that? Do we have to tie it directly to him? Because he's the one that said, you know, steal a house, basically. Secure the house. I don't know that we have to tie it directly to him. There's never been an argument made about that. And then on causation, I see that I am... You can spend a few seconds to wrap up. Okay. Just to wrap it up on causation. The government's entire argument hinges on an alternate universe. For causation, we're just looking at causation in this universe. Was there a connection between the illegality, the seizure, and the finding of the firearms? And we know that there was because they were able to secure a search warrant to look for and seize firearms based on what happened during the seizure. Thank you, Your Honors. All right, thank you. This matter will be submitted.